A04A2295. WILEY v. THE STATE.
(609 SE2d 731)

MIKELL, Judge.

James Eugene Wiley was convicted of child molestation based on acts committed against his nine-year-old daughter, B. W. He appeals the order denying his motion for new trial, challenging the sufficiency of the evidence and the admission of his use of computer pornography. We affirm.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Wiley] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

So viewed, the evidence shows that Wiley had lived with his mother, Connie Ellis, for his entire life before being jailed as a result of this incident. B. W. came to live with them in 1999. Ellis and her husband had custody of the child, her granddaughter. B. W. attended third grade at Eastside Elementary School in Whitfield County. Her teacher, Charle Lee, described B. W. as "always happy, just really a wonderful student, full of energy." Lee testified that B. W. loved to

---

[1] (Citations and footnotes omitted.) *Price v. State*, 252 Ga. App. 273 (1) (556 SE2d 168) (2001).

relate her daily activities to her teacher. On the morning of May 16, 2003, Lee noticed a change in B. W.'s behavior. According to Lee, B. W. seemed sad and withdrawn. Lee became concerned and asked B. W. whether everything was all right. B. W. said "she was bothered about her father touching her in spots that were covered by her swimsuit." After this disclosure, Lee sent B. W. to speak with the principal, Orenda Gregory.

Gregory testified that B. W. wanted Gregory to know that something had happened to her, and the child wanted help with getting it stopped. B. W. stated that her father had been touching her private parts, under her clothes, for about two weeks. She also stated that she had asked him to stop, but he refused. Finally, B. W. said that she had not told her grandmother because she was always on the computer. According to Gregory, B. W. "was very . . . adamant that she did not want him to do this and she wanted somebody to tell him to stop." Gregory reported the incident to the Whitfield County Department of Family and Children Services ("DFCS").

DFCS referred the case to the sheriff's office, and the two departments conducted a joint investigation. Detective Jackie Williams testified that he and a DFCS investigator, Victor Long, proceeded to the school on May 16 and interviewed the child. B. W. told them her father touched her "private place." According to Williams, B. W. pointed to her vaginal area and stated that she had been touched there repeatedly by her father. Further inquiry led to more detailed disclosures. B. W. said that he touched her skin with his hand; that she did not like it; that she told him to stop; and that he would not stop. She indicated that these incidents occurred between May 5, 2003, and May 14, 2003. B. W. also told the detective and Long that she was dressed each time, and that Wiley would either undo her clothing or reach inside and put his hands in her underwear. When he made contact with her vagina, Wiley "would rub it and touch it." After the last incident on May 14, Wiley instructed B. W. not to tell anybody.

After concluding the interview, Williams and Long went to Wiley's residence and spoke to Wiley for approximately 30 minutes. As soon as Williams related B. W.'s allegations to Wiley, he admitted that he had touched her. However, he also claimed

> that he was doing it trying to be a good parent. He stated . . . that he has had problems in the past with her having infections and that he would take her and look at her for redness or swelling, and that he would use his hands to part her lips of her vaginal area . . . to check it for any rashes, redness, swelling, things like that.

Wiley stated that he had "checked" her approximately seven times in

the previous year. He also claimed that she had been taken to the doctor due to infections, but he vacillated when asked when she had been taken. Wiley first said that B. W. had visited the doctor a week or two earlier, then he said two days earlier, and finally he stated that it could have been two or three weeks earlier.

April Wiley, the defendant's sister-in-law, testified that she had observed Wiley using the computer on multiple occasions; that he viewed pornographic web sites while B. W. and other children were present; and that Wiley's excessive use of Internet pornography had been the subject of numerous family discussions. Further, April Wiley testified that after Wiley was indicted, he offered the following explanation of his behavior:

> He said that he was alone at home with [B. W.] one day. He was using the bathroom. She called out that she was burning. He said that he came out of the bathroom, took her, laid her down on the bed, took her jeans off, took her underwear off, had her spread her legs. He checked each side of her vagina lips for rashes, took his fingers, opened her lips up and looked inside. That's what he said he did to [B. W.]

On May 23, 2003, B. W. was seen by Joan Jackson, a family nurse practitioner, to follow up on the complaint of possible sexual abuse. Jackson, who was called as a defense witness, testified that she noted a slight irritation in the child's labia minora, the tissue inside her vaginal lip. On cross-examination, Jackson testified that her office had received no prior complaints of vaginal irritation with regard to B. W. Rather, there had been one complaint of painful urination. Moreover, Jackson indicated that the child was not complaining of any irritation during the May 23 examination.

1. "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[2] Wiley argues that the evidence recounted above does not suffice to sustain his conviction because, although he freely admitted touching and viewing his daughter's unclothed vagina seven times in the previous year, the state did not prove beyond a reasonable doubt that he did so with the intent to arouse or satisfy his sexual desires. However, Wiley's assertion that he touched his daughter for medical reasons merely created a conflict in the evidence for the jury to resolve. "[I]t is the function of the jury, not the appellate court, to resolve conflicts in the

---

[2] OCGA § 16-6-4 (a).

testimony and determine the credibility of the witnesses."[3] The jury could have inferred from B. W.'s statement that Wiley put his hands in her underwear, coupled with April Wiley's testimony concerning his excessive viewing of pornography, that Wiley acted with the requisite intent to arouse or satisfy his sexual desires. "[W]eighing evidence is exclusively a jury function; an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Review of the transcript reveals ample evidence from which any rational trier of fact could have found" Wiley guilty of child molestation beyond a reasonable doubt.[4]

2. Wiley next argues that he was denied his right to a fair trial when the state introduced evidence of his use of computer pornography. Wiley maintains that, because the testimony showed that he viewed images of naked women, not children, the testimony was inadmissible under *Simpson v. State*.[5] In that case, our Supreme Court held that sexually explicit material cannot be admitted merely to show the defendant's lustful disposition; it is admissible only if it can be connected to the crime charged.[6] According to Wiley, his excessive viewing of images of naked women in his daughter's presence cannot be linked to his fondling of his daughter. Wiley's argument fails. First, it is not clear whether *Simpson* "prohibits oral testimony regarding a defendant's possession of pornographic materials, as opposed to admission of the materials themselves."[7] Second, and more importantly, Wiley failed to object to the admission of this testimony at trial. Therefore, this argument is waived.[8]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 25, 2005.

*Michael R. McCarthy*, for appellant.
*Kermit N. McManus, District Attorney, Stephen E. Spencer, Assistant District Attorney*, for appellee.

---

[3] (Citation and punctuation omitted.) *Roberts v. State*, 232 Ga. App. 745, 746 (1) (503 SE2d 614) (1998).

[4] (Footnote omitted.) *Williams v. State*, 253 Ga. App. 453, 454 (559 SE2d 512) (2002). See generally *Wilkerson v. State*, 266 Ga. App. 721, 722 (1) (598 SE2d 364) (2004).

[5] 271 Ga. 772 (523 SE2d 320) (1999).

[6] Id. at 774 (1).

[7] (Citations omitted.) *Burk v. State*, 253 Ga. App. 272, 273 (1) (558 SE2d 726) (2001).

[8] See *Hoffman v. State*, 259 Ga. App. 131, 134 (3) (576 SE2d 102) (2003).