**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 14, 2013**

# In the Court of Appeals of Georgia

A13A1595. BROWN v. THE STATE.

BRANCH, Judge.

Marquis Brown was tried by a Clayton County jury and convicted on four counts of child molestation.[1] In this out-of-time appeal from the denial of his motion for a new trial, Brown argues that the evidence is insufficient to sustain his convictions. Brown also asserts that the trial court erred in requiring that the written statement given to police by one of the victims be redacted before it could be introduced at trial, thereby precluding him from impeaching that victim's credibility. Additionally, Brown alleges error by the trial court in allowing the introduction of

---

[1] OCGA § 16-6-4 (a) (1). The jury acquitted Brown on one count of rape, one count of aggravated sodomy, one count of child molestation, and one count of enticing a child for indecent purposes. The trial court directed a verdict of acquittal on one count of aggravated child molestation and one count of enticing a child for indecent purposes.

testimony that Brown had previously committed acts of domestic violence against the mother of his victims. We find no error and affirm.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." (Citation omitted.) *Marriott v. State*, 320 Ga. App. 58 (739 SE2d 68) (2013). So viewed, the record shows that Brown's victims, J. C. and T. D., are the daughters of his former girlfriend. Brown lived with the mother and daughters for approximately 2 years, and during that time he molested J. C. on three occasions and T. D. on one occasion.

J. C. testified that when she was seven years old she was watching television in a bedroom with Brown when Brown moved close to her and fondled her buttocks. He then instructed J. C. that if she told anyone about the incident, he would kill the girl and her mother. J. C. further testified that on another occasion she was watching television when Brown entered the room and began to play a DVD of a pornographic movie. When J. C. closed her eyes to avoid watching the television screen, Brown told her to open her eyes and made her stay in the room and watch the movie twice. And Brown again told J. C. that if she reported the incident to anyone, he would kill her family. On a third occasion, J. C. was lying on her mother's bed with Brown, with the

2

two of them on opposite sides. Brown suddenly grabbed J. C.'s hand, pulled it towards him and under the covers, and placed the child's hand on his penis.

J. C.'s older sister, T. D., testified that when she was 12 years old, she returned from a trip to the swimming pool and Brown told her to shower and wash her hair, which she did. After she finished her shower and dressed, Brown came into the bathroom naked and insisted that T. D. had not washed her hair. Although T. D. tried to argue with Brown about this fact, he made her undress and take a second shower to re-wash her hair. As T. D. was showering a second time, Brown, who was still naked, joined T. D. in the shower, stood in front of her, and washed her hair himself.

Brown's conduct came to light after he and the girls' mother broke up and he moved out of their house. During a conversation with her mother, J. C. stated that while she missed Brown's children, she did not miss Brown. When her mother pressed J. C. as to why she did not miss Brown, the child told her about the molestation. The mother then questioned T. D., who also admitted that Brown had molested her.

At trial, J. C. explained that she did not report the incidents at the time they occurred because she believed Brown when he said he would kill her mother and her family if she told anyone. T. D. testified that she did not report the molestation to her

3

mother when it happened because she was afraid her mother "would get beat up again." She then explained that Brown had beaten her mother on prior occasions.

After the mother learned of the molestation, she contacted police. Officers then interviewed both girls and both J. C. and T. D. provided police with written statements about the acts of molestation. Additionally, while at home J. C. wrote a second statement about her molestation, which her mother eventually found and gave to police. All three of these written statements were admitted into evidence at trial.

The police arranged for both of the victims to undergo forensic interviews at a local facility specializing in assisting victims of child abuse and molestations. Each of these interviews was recorded, and copies of these recordings were introduced into evidence and played for the jury. Chantsy Watkins, the certified forensic interviewer who conducted the interviews of both J. C. and T. D. testified at trial and was qualified as an expert in the forensic interviewing of children. Watkins opined that the statements made by each of the victims during their respective interviews were consistent with their claims of molestation. She further testified that, in her professional opinion, neither of the victims exhibited any signs of having been coached with respect to their allegations.

Brown testified in his own defense and denied that he had ever touched either of the victims inappropriately or that any of the incidents the victims testified about had happened.

Based on the foregoing evidence, the jury found Brown guilty of four counts of child molestation. Following his conviction, Brown filed a motion for a new trial. which was denied. Brown subsequently filed a motion for an out-of-time appeal, which the trial court granted. This appeal followed.

1. Brown argues that the evidence is insufficient to sustain his convictions for two reasons. First, Brown points to the fact that the only evidence supporting these allegations are the statements and testimony of the victims themselves, and their testimony was contradicted by his own. Georgia law, however, "does not require corroboration of a child molestation victim's testimony." (Punctuation and footnote omitted.) *Barnes v. State*, 299 Ga. App. 253, 254-255 (1) (682 SE2d 359) (2009). Thus, the testimony of the victims, standing alone, was sufficient to support Brown's convictions. Id. See also *Reid v. State*, 319 Ga. App. 782, 783 (1) (738 SE2d 624) (2013) ("the testimony of a single witness is generally sufficient to prove a fact, including child molestation") (citations omitted). Moreover, the evidence showed that when describing Brown's conduct towards them, the victims were consistent in their

5

outcry statements, their statements to police, their forensic interviews, and their trial testimony. The jury was aware of this consistency and could take that into consideration in evaluating the victims' testimony. See *Kelley v. State*, 308 Ga. App. 418, 420-421 (707 SE2d 619) (2011); *Brown v. State*, 295 Ga. App. 542, 544 (672 S.E.2d 514) (2009). Additionally, "[a]lthough Brown testified that he did not commit the charged offense[s], the jury was not required to believe Brown's testimony, nor to disbelieve the [S]tate's witnesses." (Footnote omitted.) *Brown*, 295 Ga. App. at 544.

Brown also points out that to convict him of child molestation, the State was required to prove that he committed an "immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). Brown contends that even if the State did prove that he forced J. C. to watch pornography and showered with T. D., the State failed to prove that he engaged in that conduct "with the intent to arouse or satisfy [his] sexual desires." In support of this contention, Brown cites the victims' testimony that Brown showed no signs of physical arousal during either of these incidents. This argument is not supported by relevant law.

6

The child molestation statute "does not require proof of [the defendant's] actual arousal." *Cline v. State*, 224 Ga. App. 235, 236 (1) (480 SE2d 269) (1997) (rejecting defendant's argument that State failed to prove child molestation where evidence showed he did not obtain or maintain an erection during the charged incidents). Instead, the law requires only that the defendant have acted with the intent to arouse his sexual desires. OCGA § 16-6-4 (a). The question of intent "is peculiarly a question of fact for determination by the jury," *Blanton v. State*, 191 Ga. App. 454, 455 (1) (382 SE2d 133) (1989), which may infer a defendant's intent from the evidence presented at trial. *Branam v. State*, 204 Ga. App. 205, 206 (1) (419 SE2d 86) (1992). See also OCGA § 16-2-6 (the trier of fact may find the requisite criminal intent "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted"). Where the jury finds the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference. *Howard v. State*, 268 Ga. App. 558, 559 (602 SE2d 295) (2004) ("when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak and unsatisfactory the verdict will not be set aside on that ground") (citation and punctuation omitted).

We have previously found that evidence showing that the defendant "[s]imply expos[ed] [his] sexual organs to a child without any physical conduct," even if the child did not actually see those organs, sufficed to prove that the defendant acted with the intent to arouse or gratify his sexual desires. *Rainey v. State*, 261 Ga. App. 888, 889-890 (1) (584 SE2d 13) (2003). See also *Hathcock v. State*, 214 Ga. App. 188, 190 (2) (447 SE2d 104). Accordingly, the jury could infer that when Brown showered in the nude with a naked T. D., he did so with the intent to arouse or satisfy himself sexually. The jury could also infer that Brown acted with the intent to arouse himself when he forced J. C. to watch a pornographic movie with him. See *Grimsley v. State*, 233 Ga. App. 781, 784-785 (1) (505 SE2d 522) (1998) (exposing children to explicit sexual acts is sufficient to support a conviction for child molestation). Finally, the fact that Brown fondled J. C.'s buttocks and forced her to touch his penis also supports the inference that Brown did these things with the intent to arouse or satisfy himself sexually. See *Wiley v. State*, 271 Ga. App. 393, 395 (1) (609 SE2d 731) (2005); *Andrew v. State*, 216 Ga. App. 427, 427 (454 SE2d 542) (1995). Thus, considering Brown's conduct as shown by the acts testified to by his victims, and especially given that his victims testified that Brown engaged in this type of conduct on more than one

occasion, we are satisfied that the evidence showed beyond a reasonable doubt that Brown acted with the intent to arouse or satisfy his sexual desire.

2. In the written statement that she provided to police, T. D. wrote that Brown's daughter, A. B., told T. D. "how she was so glad that [Brown] was gone [from her house,] because . . . he use[d] to beat them or give them whooping[s] for no reason. She [A. B.] said if they [the children] asked a question like[,] 'Can I get something to drink?[,]' [Brown] would yell and whoop them." Prior to trial, the State made a motion in limine seeking permission to enter a redacted version of T. D.'s written statement into evidence; specifically, the State proposed redacting the hearsay regarding statements allegedly made to T. D. by Brown's daughter. Brown opposed the motion in limine, arguing that he wanted to use the T. D.'s hearsay statements to impeach her credibility. In support of this argument, Brown asserted that he planned to call his daughter as a witness at trial and that she would testify that she and T. D. never had the conversation referenced in T. D.'s written statement. The trial court overruled Brown's objection to the redacted statement, noting that the part of the statement at issue constituted hearsay and that whether T. D. lied about being told that Brown was "mean" was irrelevant to the issues at trial.

9

On appeal, Brown contends that the trial court erred in allowing the State to offer a redacted version of T. D.'s written statement. The record shows, however, that despite the State's intent to introduce a redacted version of T. D.'s statement, an unredacted version was admitted at trial. Thus, the question on appeal is whether the trial court erred when, in ruling on the State's motion in limine, it held that Brown's daughter would not be allowed to testify as to the alleged hearsay statements contained in T. D.'s written statement.

Even assuming that the trial court's ruling was erroneous, such error does not provide a basis for reversal unless Brown was harmed by that error. *Martinez v. State*, 306 Ga. App. 512, 525 (6) (702 SE2d 747) (2010) (a confrontation clause violation, including the "improper denial of a defendant's opportunity to impeach a witness . . . is subject to a harmless-error analysis") (citation, punctuation and footnote omitted). "The test for harmful error is whether it is highly probable that the error contributed to the judgment." (Citation, punctuation and footnote omitted.) Id. Here, the State contends that the record does not support the conclusion that Brown suffered harm as a result of the trial court's ruling. Specifically, the State contends that Brown failed to call his daughter to testify at the motion for new trial hearing and therefore failed to show that her testimony would have impeached T. D. Brown does not dispute that

10

he failed to offer A. B.'s testimony at the hearing below, and in the absence of this testimony Brown could not prove that any testimony A. B. would have offered at trial would have been favorable to him. Accordingly, Brown has failed to show that he suffered harm as a result of the trial court's refusal to allow A. B.'s testimony. See *Roberts v. State*, 322 Ga. App. 659 (1) (745 SE2d 850) (2013).

Brown's claim of error also presents no basis for reversal because he did not ask that a transcript of the hearing on his motion for a new trial be included in the appellate record. The purpose of a hearing on a defendant's motion for a new trial is to allow the defendant an opportunity to show the court below that some error or deficiency occurred at trial and that as a result, the defendant suffered some harm (or that some harm must be presumed). A necessary component of a new trial hearing, therefore, is the presentation of evidence and legal arguments demonstrating harm to the defendant and/or refuting the defendant's claim of harm. When a defendant appeals from an order denying his motion for a new trial on the grounds he suffered harmful error, he is necessarily contending that the evidence and legal arguments presented at the motion for new trial hearing did not support the trial court's findings that no error and/or no harm occurred. Obviously, we cannot review such a claim of error in the absence of a transcript showing what evidence and arguments were

11

presented to the trial court. See *Frank v. State*, 257 Ga. App. 164, 165 (1) (570 SE2d 613) (2002) ("[t]his court is a court for the correction of errors and its decision must be made on the record and not upon the briefs of counsel") (citation and punctuation omitted). Thus, because Brown affirmatively declined the opportunity to cause a transcript of the motion for new trial hearing to be included in the record on appeal,[2] we must assume that the evidence (or lack thereof) presented at that hearing supports the trial court's denial of Brown's new trial motion. See *Orange v. State*, 319 Ga. App. 516, 518-519 (3) (736 SE2d 477) (2013). In other words, we must presume that such evidence supports the conclusion that any error in denying Brown the opportunity to present A. B.'s testimony regarding the hearsay contained in T. D.'s written statement did not harm Brown. Id. Accordingly, we will not reverse the trial court on this ground.

---

[2] We emphasize that the record reflects that Brown was notified of what transcripts were being included in the record on appeal and was offered the opportunity to designate any additional transcripts he felt were necessary to his appeal, including the transcript of the motion for new trial hearing. Brown's counsel, however, affirmatively represented to the trial court's clerk's office that he was not designating any additional transcripts for inclusion in the appellate record.

3. Brown contends that the lower court erred in allowing the testimony of T. D.[3] that Brown had previously committed acts of domestic violence against the mother, because such testimony constituted impermissible character evidence. We find no merit in this contention.

"Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue." (Punctuation and footnote omitted.) *Hernandez v. State*, 304 Ga. App. 435, 437 (3) (696 SE2d 155) (2010). Thus, Georgia's appellate courts have consistently held that evidence of a defendant's history of violence towards a victim, a victim's family, or even a witness, is admissible to explain a delay by the victim, her family, or another witness in reporting a crime. See *Price v. State*, 269 Ga. 373, 374-375 (2) (497 SE2d 797) (1998) (trial court properly admitted testimony concerning defendant's acts of violence towards his girlfriend to explain the girlfriend's ten-week delay in reporting the crime); *Hernandez*, 304 Ga. App. at 437-438 (3) (trial court did not abuse its discretion in allowing mother of child molestation victim to testify as to defendant's

_____

[3] Brown also claims that the trial court erred in allowing the testimony of T. D.'s mother on this issue. Our review of the mother's trial testimony, however, shows that she did not testify as to any acts of violence perpetrated against her by Brown.

13

acts of domestic violence; testimony was relevant to explain the mother's three-month delay in reporting the molestation and the defense contended that mother had "concocted the incident because [she] wanted a divorce"). See also *Pruitt v. State*, 274 Ga. 708, 710 (2) (a) (559 SE2d 470) (2002) (testimony offered to explain a witness's long delay in reporting the crime was admissible even though it incidentally placed the defendant's character in issue, where such testimony was relevant to the jury's evaluation of the witness's credibility and the defense alleged that the witness had fabricated the allegations).

In this case, the testimony at issue was offered for the limited purpose of explaining T. D.'s delay in reporting the act of molestation until after Brown and her mother were no longer in a relationship and Brown had moved out of the family home.[4] As the above-referenced cases demonstrate, this testimony was both probative and relevant, particularly in light of Brown's contention that the victims had fabricated the incidents of child molestation. Accordingly, the trial court did not abuse its discretion in allowing this testimony.

---

[4] Immediately following T. D.'s testimony on this issue the trial court gave a limiting instruction to the jury, explaining that they could consider this testimony for "the sole purpose of explaining, if it does, the child's conduct and what steps she took in this incident."

14

For the reasons set forth above, we affirm the trial court's denial of Brown's motion for a new trial.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*