**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 31, 2018**

# In the Court of Appeals of Georgia

A17A1768. UNDERWOOD v. THE STATE.

MILLER, Presiding Judge.

Walter Underwood was convicted of two counts of child molestation (OCGA § 16-6-4 (b) (1)), and sentenced to concurrent 12-year terms of imprisonment.[1] He now appeals from the denial of his motion for new trial. We affirm Underwood's convictions because (1) there was no reversible error in the trial court's determination that Underwood's estranged wife could invoke marital privilege and decline to testify, and (2) Underwood has not shown that trial counsel's performance was constitutionally deficient or that he was prejudiced as a result, as required to establish ineffective assistance of counsel. Although we affirm the convictions, we must vacate

---

[1] Underwood was initially charged with rape in addition to molestation, but a nolle prosqui was entered on the rape charge.

the sentence imposed and remand for resentencing because, as the State concedes, the trial court erred in failing to impose a split sentence as required by OCGA § 17-10-6.2 (b).

Viewing the evidence in the light most favorable to the verdict,[2] Underwood often babysat his several grandchildren, including the victim who was his step grand-daughter. When the victim was eight years old, Underwood began touching her by slapping her bottom and touching her breasts while she was clothed. Once, while babysitting, Underwood told the victim's brother to go to his room, leaving Underwood and the victim alone. Underwood then touched the victim's bottom, breasts, and vagina. On one occasion, Underwood took the victim into her parents' bedroom, locked the door, undressed the victim, and started kissing and touching her. He then removed his own clothes, tried to "put himself inside" the victim, and then "peed on" her. The victim ran into the bathroom, and Underwood followed her, instructing her not to tell anyone. The victim was frightened and did not tell anyone at the time.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

Underwood continued to touch and kiss the victim after this incident, including a time when he attempted to remove her clothes but she stopped him.[3] In 2013, when she was about 13-years-old, a friend talked about how she had been molested. This convinced the victim that she should tell someone what Underwood had been doing to her, and she told her step-mother, who is Underwood's daughter. Her step-mother "sat there and cried, and a few minutes later she [said], I believe you, but I cannot tell you why."

After the victim's accusation, Underwood's two sons, daughter, sister, and estranged wife held a family meeting with Underwood. During this meeting, Underwood admitted that he molested the victim. The family later learned that Underwood had also molested his niece when she was about 12 years old.

At trial, Underwood testified in his own defense, denying the allegations. According to Underwood, he suffers from severe medical issues that prevent him from experiencing sexual desire. He has had several heart attacks, numerous angioplasties, and has had more than 17 stints placed to open blocked arteries. He

---

[3] In 2013, the victim was interviewed by counselors at the Child Advocacy Center, consistently describing the molestation and using a drawing to identify where Underwood touched her. Her testimony in this interview, which was entered into evidence, was consistent with her testimony at trial.

takes 22 different medicines daily for blood pressure, cholesterol, and depression. As a result, he suffers from erectile dysfunction.

The jury convicted Underwood of both counts of molestation. The trial court sentenced Underwood to concurrent terms of 12 years' imprisonment.

1. Underwood contends that the trial court improperly advised his estranged wife that she could invoke marital privilege and decline to testify because (a) the privilege does not apply when the crime involved a minor, and (b) Underwood and his wife were separated at the time of the trial. We discern no reversible error.

Under OCGA § 24-5-503 (a), "[a] husband and wife shall be competent but shall not be compellable to give evidence in any criminal proceeding for or against each other." However, this privilege does not extend to cases in which "[t]he husband or wife is charged with a crime against the person of a child under the age of 18 . . . ." OCGA § 24-5-503 (b) (1). In such cases, "such husband or wife shall be compellable to give evidence only on the specific act for which the accused is charged." Id. The privilege belongs to the spouse and not the defendant. *Young v. State*, 232 Ga. 285, 287 (206 SE2d 439) (1974) (discussing prior version of the statute). Generally, we apply a harmless error analysis to the issue of whether the trial court erred by excluding testimony of a witness. See, e.g., *Walker v. State*, 296 Ga. 161, 167-168 (2)

(766 SE2d 28) (2014) (exclusion of testimony that was cumulative, if error, was harmless); *Lynn v. State*, 296 Ga. 109, 113 (2) (765 SE2d 322) (2014) (considering whether exclusion of testimony was harmless, but concluding that it was not because the testimony concerned a possible motive, was hotly disputed, and was central to the defendant's defense, and credibility of witnesses is an issue for the jury).

Here, the trial court advised Underwood's wife, Debra, that she could invoke the privilege and decline to testify, which she elected to do. At the hearing on the motion for new trial, Debra testified that she and Underwood had been separated about a year and a half at the time of the trial. She stated that she was aware Underwood experienced erectile dysfunction, but she could not attest to his sexual health while the two were separated. The trial court acknowledged that the marital privilege would not apply in cases involving minors, but that any testimony provided would be limited to the "specific act." The trial court then concluded that proof of penetration was not necessary in a molestation case and therefore, testimony regarding Underwood's erectile dysfunction was not related to the "specific act." Moreover, the court noted that Underwood's defense was that the acts never happened – not that he could not commit them. Thus, testimony about erectile

5

dysfunction was not relevant to his defense. The trial court also concluded that the privilege would continue even if the spouses separated.

Pretermitting whether the exception to marital privilege in § 24-5-503 (b) (1) would apply in this case, either due to the parties' separation or because the testimony involved the "specific act" with which Underwood was charged, we conclude that any error in advising Debra that she could invoke the privilege was harmless.

Underwood testified at length about his medical condition, asserting that it left him devoid of any sexual desire and suffering from erectile dysfunction. Had Debra testified, she would have confirmed the erectile dysfunction diagnosis. However, Debra was in no position to testify to Underwood's ability to achieve sexual arousal, and her testimony would not have negated an element of the crime. *Cline v. State*, 224 Ga. App. 235, 236 (1) (480 SE2d 269) (1997) (rejecting the argument that State failed to prove child molestation where evidence showed he did not obtain or maintain an erection during the conduct). Thus, any error in advising Debra that she could assert marital privilege was harmless.

2. In his second enumeration of error, Underwood argues that his trial counsel was constitutionally deficient in failing to (a) call Debra as a witness to testify regarding his medical condition; (b) object to hearsay evidence in the victim's

testimony about her step-mother's response to the allegations; and (c) investigate his sexual health.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citation and punctuation omitted.) *Davenport v. State*, 316 Ga. App. 234, 239 (3) (729 SE2d 442) (2012). To meet the prejudice prong of the analysis, the defendant must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009). With this standard in mind, we address each of Underwood's enumerations of error in turn.

(a) *Failing to call Debra as a witness*

7

Underwood contends that Debra's testimony would have corroborated the nature and severity of his medical condition and erectile dysfunction, and that trial counsel was deficient in failing to understand the legal standard applicable to the use of marital privilege. We disagree.

The trial court concluded that counsel's performance was reasonable and that Underwood failed to show prejudice. We agree that Underwood cannot show prejudice because there is no reasonable probability that Debra's testimony would have changed the outcome of the trial. As noted, although Debra could have corroborated that Underwood suffered from erectile dysfunction, she could not testify to his ability to feel sexual arousal. *Duvall v. State*, 273 Ga. App. 143 (1) (a) (614 SE2d 234) (2005) ("Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this.") (citation omitted). Importantly, Underwood's inability to show his arousal through an erection does not negate the charges against him because the child molestation statute "does not require proof of [the defendant's] actual arousal." *Cline*, supra, 224 Ga. App. at 236 (1); see also *Brown v. State*, 324 Ga. App. 718, 721 (1) (751 SE2d 517) (2013) ("the law requires only that the defendant have acted with the intent to arouse his sexual desires. The question of intent is peculiarly a question of fact for determination by the jury, which

8

may infer a defendant's intent from the evidence presented at trial.") (citations and punctuation omitted).

Here, the evidence showed that Underwood touched the victim's breasts and bottom, kissed her, removed her clothes, and touched her vagina. This was sufficient for the jury to find that Underwood intended to arouse himself in doing so. See *Brown*, supra, 324 Ga. App. at 721 (1) (fondling the victim supported inference that the defendant intended to arouse himself). Debra's testimony that Underwood suffered from erectile dysfunction had no bearing on any element of the crime charged. *Cline*, supra, 224 Ga. App. at 236 (1). Therefore, Underwood cannot show that the outcome of his trial would have been different had Debra testified, and his claim of ineffective assistance of counsel fails on this ground.

(b) *Hearsay testimony*[4]

Underwood next argues that trial counsel was deficient for failing to object when the victim testified that her step-mother said she believed the victim. However, other than stating that counsel was ineffective for failing to object, he cites no law to

---

[4] Underwood does not argue that the step-mother's testimony improperly bolstered the victim's credibility. See *Wright v. State*, 327 Ga. App. 658, 661 (2) (a) (760 SE2d 661) (2014). Therefore, we do not address whether the testimony was improper on this ground.

9

support said argument. Thus, he arguably has waived it. Court of Appeals Rule 25 (c) (2).

Nevertheless, we conclude that Underwood cannot show prejudice. The jury heard the victim's testimony and watched the recorded interview she gave as part of the investigation, all of which were consistent with the allegations. The jury also heard testimony from other family members that Underwood admitted to molesting the victim when he was confronted. Additionally, the jury heard Underwood's testimony denying that he engaged in any inappropriate conduct. It is the jury's role to determine the credibility of witnesses and to weigh the evidence. *Bibb v. State*, 315 Ga. App. 49 (1) (726 SE2d 534) (2012). On this record, we conclude that Underwood has not shown that the outcome would have been different had counsel objected to this single statement. *Wright v. State*, 327 Ga. App. 658, 662 (2) (c) (760 SE2d 661) (2014) (improper hearsay evidence was cumulative and thus did not prejudice defendant).

(c) *Failure to investigate sexual health*

Underwood next asserts that trial counsel was deficient in failing to inquire into his sexual health and medical conditions through expert testimony. We discern no error.

First, Underwood failed to provide any proffer as to what an investigation would have shown or how this information would have changed the outcome of his trial, and his mere speculation is insufficient. See *Lupoe v. State*, 300 Ga. 233, 241 (2) (b) (794 SE2d 67) (2016) (defendant failed to show prejudice from counsel's lack of investigation where he did not present evidence of what such investigation would have uncovered or how such information would have changed the outcome). At the motion for new trial, Underwood did not present any medical records, call any medical experts, or otherwise establish what favorable evidence the investigation would have uncovered. See *Hughes v. State*, 289 Ga. 98, 100 (3) (709 SE2d 764) (2011) (failure to call expert at hearing on motion for new trial made it impossible for defendant to show prejudice); *Puckett v. State*, 342 Ga. App. 518, 526 (2) (804 SE2d 648) (2017) (defendant failed to demonstrate prejudice where, at hearing on motion for new trial, there was no expert testimony on battered person syndrome to show that the outcome of trial could have been different had counsel called expert to testify). "Absent a proffer of what the testimony of [an] expert would have been at trial, [a defendant] cannot show that there is a reasonable probability that the outcome of the trial would have been different had . . . counsel taken the suggested course." (Citation omitted.) *Ware v. State*, 273 Ga. 16, 17 (3) (537 SE2d 657) (2000). Thus,

11

Underwood's failure to proffer any evidence at the hearing on the motion for new trial is fatal to his claim of ineffective assistance of counsel on this ground.

3. Finally, Underwood argues - and the State concedes - that his sentence was improper because it failed to include a split sentence, as required under OCGA § 17-10-6.2 (b).

OCGA § 17-10-6.2 (b) (5) instructs that a defendant be sentenced to a split sentence upon conviction for child molestation that includes the minimum term of imprisonment and a least one year of probation.[5] Because the trial court failed to impose such a sentence, we vacate the sentence imposed and remand the case for resentencing consistent with OCGA § 17-10-6.2 (b).

*Judgment affirmed; sentence vacated, and case remanded. Doyle, P. J., and Reese, J., concur.*

---

[5] At the hearing on the motion for new trial, the trial court indicated its intent to resentence Underwood in conformity with OCGA § 17-10-6.2 (b). However, the record does not establish that the trial court has done so.