**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 21, 2023

# In the Court of Appeals of Georgia

A23A0347. TARLTON v. THE STATE.

A23A0972. TARLTON v. THE STATE.

PIPKIN, Judge.

Jeramiah H. Tarlton ("Jeremiah") and Maggie Ann Tarlton ("Maggie") (collectively "Appellants") were tried together before a jury and found guilty of child molestation and sexual battery. They filed separate motions for new trial and, following the denial of their motions, separate appeals to this Court. We consolidated their appeals for review and now affirm in both cases.

The evidence presented at trial shows that the victims in this case are the Appellants' daughter, E. T. and their son, J. T., who were three and four years old, respectively, in April 2012. Around that time, Cynthia Fuller, a relative of the Mother's, was visiting from Montana. One day during her visit, while she was

babysitting J. T., she entered the room where he was watching cartoons and saw that he had pulled down his shorts and underwear and was "jacking off." Fuller, who was the mother of two older boys, testified that she did not think this was normal behavior for a four year old, so she asked J. T. if he had seen somebody else do that. J. T. told her that he had, and when she asked him who, Fuller said he gave her three names – "Daddy," "David" and "Aaron."[1]

Family members contacted the Department of Family and Children Services ("DFACS") about J. T.'s statements. A DFACS worker testified that she meet with J. T., who told her that his father had touched his private area. The worker also spoke to E. T., who said that her father had touched her and pointed to her private area.

Carol Wollifred, Executive Director and forensic interviewer for a local Child Advocacy Center, testified that she conducted a forensic interview with J. T. and E. T.; this interview was recorded and played for the jury. During the interview, J. T. said that both his mother and his father touched his "pee bug" and that his father touched his sister's "toot toot" and "booty." J. T. said that these acts happened while they all had their clothes off. The interviewer gave him anatomically correct dolls to

---

[1] During her direct testimony, Fuller testified that the first name J. T. said was Daddy but when confronted with her statement made at the time of the disclosure, she testified that he named David first and then Daddy and Aaron.

demonstrate his parents' actions, and he undressed them and moved his fingers in and out of the anal opening of both the boy and girl doll and the vaginal opening of the girl doll; he also moved the boy doll's penis with his hand and made a masturbation motion on the adult male doll. The forensic interviewer testified that his behavior with the dolls was not normal behavior for a four year old. J. T. said that these acts took place at his "mommy's house" and that his parents were not bathing or cleaning him at the time they did this. He also said that his parents showed them movies with little girls and boys who were naked. J. T. also said that it felt good when it happened but that he did not like it and that his parents told him not to talk about what they did to him. The forensic interviewer also had to reassure J. T. that his mother could not hear him during the interview.

E. T. was also interviewed. Although E. T., who was only three years old at the time of the interview, was reluctant to talk about the things her parents had done to her, she did indicate to the interviewer that she had been touched on both her "toot toot" and "booty."

Appellants both testified at trial, and denied that they committed any acts of molestation or sexual battery against their children.

1. Jeremiah first argues that he is entitled to a new trial because the State failed to prove venue. See OCGA § 17-2-2 (a) (In general, crimes must be tried in the county where they are committed).

> On appeal, the appellate court reviews a challenge to the sufficiency of the venue evidence just like it reviews a challenge to the evidence of guilt: we view the evidence of venue in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

(Citation omitted.) *Cwik v. State*, 360 Ga. App. 525, 525-526 (859 SE2d 142) (2021). Concerning proof of venue, our appellate courts have explained that

> [v]enue is a jurisdictional fact that the State must prove beyond a reasonable doubt in every criminal case. The State may meet its burden at trial using either direct or circumstantial evidence, and the determination of whether venue has been established is an issue soundly within the province of the jury.

(Citation and punctuation omitted.) *Bowman v. State*, 363 Ga. App. 711, 715 (2) (872 SE2d 485) (2022).

Here, the crimes were alleged to have occurred in Atkinson County. J. T. stated during his recorded forensic interview that the crimes occurred at his "mommy's house." Fuller testified that she went to visit the children and her "Aunt Kay" at the house where they lived in Pearson, and the investigating officer said that Pearson is located in Atkinson County. Maggie confirmed that the children, Jeremiah, her mother, whose first name is Kay, and others lived in the household with her in April 2012 when the crimes were alleged to have occurred, and Jeremiah testified at trial in 2014 that he had lived in Atkinson County for almost five years, which was during the relevant time frame when he was living in the house with the children. Viewed in the light most favorable to the jury's verdict, this evidence was sufficient to establish venue beyond a reasonable doubt. See, e.g., *Cwik*, 360 Ga. App. at 527 (1).

2. Jeremiah also challenges the sufficiency of the evidence to support his convictions.[2] As set out above, the State introduced evidence that J. T. and E. T. made statements to others about the acts perpetrated against them, and they talked about and demonstrated the acts of molestation during the forensic interview. Jeremiah

---

[2] Jeremiah was found guilty of committing one count of child molestation and one count of sexual battery against E. T. based on touching her vaginal area, and one count of child molestation and one count of sexual battery against J. T. based on touching his penis. The sexual battery counts were merged into the child molestation counts for sentencing. Thus, we are only concerned here with these two convictions.

points out, however, that the children made "outlandish claims" during the forensic interview that even the forensic interviewer found incredible[3] and that there was no physical evidence of the crimes. But as we have explained many times before, "the testimony of a single witness is generally sufficient to establish a fact[,] OCGA § 24-14-8," including the elements of child molestation, and physical or other corroborating evidence is not required. *Bland v. State*, 363 Ga. App. 268, 269 (1) (870 SE2d 823) (2022). Further, it was for the jury to resolve any conflicts or contradictions in the testimony, and the jury was likewise authorized to accept or reject any portion of the victims' statements. See *Maxwell v. State*, 348 Ga. App. 870, 873 (1) (825 SE2d 420) (2019). The evidence set out above, as well as other evidence presented at trial, was sufficient to authorize Jeremiah's convictions.

*Case No. A23A0972*

3. Maggie argues that the trial court violated her right to be present at trial when the trial judge had a discussion with the parties' counsel about the jury's request to watch a replay of the forensic interview.

---

[3] During the forensic interview, J. T. made statements such as E. T. had a box placed inside her and that a ghost and a purple substance came out of Jeremiah's penis when he masturbated.

6

Maggie's trial attorney testified about this issue at the motion for new trial hearing. Trial counsel testified that, while the jury was out for deliberations, the trial judge approached the parties' counsel in the hallway outside the judge's chambers and informed them that the jury had requested to rewatch the forensic video without anyone else being present. The trial court asked Appellants' counsel if they objected, and Maggie's trial counsel testified that she "agreed to do that." The trial transcript reflects that the trial court then cleared the courtroom and the video was replayed for the jury. After the jury watched the video, they then left the courtroom to resume deliberations.

In her motion for new trial and at the hearing on the motion, Maggie argued that allowing the jury to watch the replay of the video violated the continuing witness rule. However, for the first time on appeal,[4] Maggie argues her right to be present was violated when the trial court had a discussion with counsel and a decision was made concerning replaying the video when she was not present. As she acknowledges on

_____

[4] Although in many instances a remand will be necessary when a right to be present claim is raised for the first time on appeal, see *Champ v. State*, 310 Ga. 832, 844-845 (2) (b) (854 SE2d 706) (2021), in this case, the record was sufficiently developed at the motion for new trial hearing so that we are easily able to decide this case based on the existing record and a remand is not necessary. *Drennon v. State*, 314 Ga. 854, 866-868 (5) (880 SE2d 139) (2022).

appeal, the question is whether the discussion that was held in her absence concerning replaying the video should be considered a critical stage in the criminal proceedings. We find that it is not.

"It is well settled that the Georgia Constitution guarantees a criminal defendant the right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court." (Citation and punctuation omitted.) *Prickett v. State*, 314 Ga. 435, 441 (2) (877 SE2d 573) (2022). This right "attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. But the right does not extend to situations where the defendant's presence would be useless, or the benefit but a shadow." (Citation and punctuation omitted.) *Carter v. State*, 308 Ga. 589, 596 (3) (842 SE2d 831) (2020). Accordingly, as our Supreme Court has explained, "a defendant who is represented by counsel need not be present for portions of trial that involve questions of law and consist of essentially legal argument about which the defendant presumably has no knowledge." (Citation and punctuation omitted.) Id. This includes "a conference held by a trial court with defense and prosecuting counsel to discuss a response to a deliberating jury's substantive inquiry." *Leeks v. State*, 296 Ga. 515, 519 (3) (769 SE2d 296) (2015). Here, the trial judge brought the jury's

8

request to replay the forensic interview to the attention of the parties' counsel and inquired whether they objected to the jury's request. Whether to allow the video to be replayed and the circumstances and conditions under which the jury could watch the replay involved legal issues, and the trial court's inquiry about objections called for legal argument on the part of counsel. Holding this discussion in Maggie's absence did not violate her right to be present. *Carter*, 308 Ga. at 596 (3); see also *Huff v. State*, 274 Ga. 110, 112 (2) (549 SE2d 370) (2001) (defendant's right to be present not violated by in-chambers discussion between trial judge and counsel concerning whether defendant's in-custody statement should go with the jury because discussion involved only legal matters) .

4. Maggie also contends that she is entitled to a new trial because the trial court failed to have the jury submit the request about replaying the video in writing and failed to have it marked as a court exhibit in the presence of counsel.

Pursuant to *Lowery v. State*, 282 Ga. 68 (646 SE2d 67) (2007),

> trial courts [are required] to have jurors' communications submitted to the court in writing; to mark the written communication as a court exhibit in the presence of counsel; to afford counsel a full opportunity to suggest an appropriate response, and to make counsel aware of the substance of the trial court's intended response in order that counsel may

> seek whatever modifications counsel deems appropriate before the jury is exposed to the instruction.

Id. at 76 (4) (b) (ii). Although it appears that the trial court did not fully comply with the *Lowery* procedure, there does not seem to be any dispute about the substance of the communication; it was a simple and straightforward request to rewatch a video, and there is no contention that the parties' counsel were not informed of the request and given a full opportunity to respond to the request. Although trial counsel further testified that a "couple of minutes" after the discussion, she began to rethink her agreement to the jury's request, at no point did counsel voice any objection to the trial court's failure to follow the *Lowery* procedure, the manner in which the trial court handled the request, or to the jury rewatching the video without anyone present in the courtroom. Maggie "therefore waived this claim and is not entitled even to plain error review." *Suggs v. State*, 310 Ga. 762, 768 (6) (854 SE2d 674) (2021). Further, even if she had not waived this claim, Maggie has not demonstrated harm due to failure to follow the *Lowery* procedure and, absent such a showing, she has not demonstrated her entitlement to reversal and a new trial. *Styles v. State*, 309 Ga. 463, 469 (3) (847 SE2d 325) (2020).

5. Lastly, Maggie challenges the sufficiency of the evidence to support her conviction.[5] Maggie acknowledges that J. T. said she touched his pee bug, but points out that he also said other people touched him and made incredible statements about objects that had been put inside him and his sister. Further, she says that there is no evidence that she derived any pleasure from the alleged touching or that the touching was done with intent to arouse. However, as set out in Division 2 above, the fact that J. T. made incredible statements in addition to his clear statements and demonstrations of the inappropriate touching of his penis does not require the jury to reject his entire testimony.

As to the requirement of intent to arouse,[6] our law is clear that this element of the offense is "peculiarly a question of fact for determination by the jury, which may infer a defendant's intent from the evidence presented at trial. Where the jury finds

---

[5] Maggie was not charged with committing any crimes against her daughter, and the sexual battery count was merged with the child molestation conviction for sentencing.

[6] At the time this case was tried, Georgia law provided that a person commits the offense of child molestation when he or she "[d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arose or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). Here, the indictment charged that the act of touching J. T.'s penis was done with the intent to arouse the accused.

11

the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference." (Citation and punctuation omitted.) *Brown v. State*, 324 Ga. App. 718, 720-721 (1) (751 SE2d 517) (2013). Here, the evidence showed that Maggie touched and moved her hand on J. T.'s penis, which he demonstrated using anatomically correct dolls; he also said that the act was not done while she was bathing or otherwise cleaning him. Further, in addition to the touching, Appellants watched movies featuring nude children in the presence of their children. This evidence and other evidence presented at trial was sufficient to allow the jury to infer Maggie's intent to arouse herself from touching her son's penis. See *Brown*, 324 Ga. App. at 721 (1) (jury could infer defendant's intent to arouse himself when he forced victim to watch a pornographic movie with him). Accordingly, Maggie's conviction is affirmed.

*Judgments affirmed. Rickman, C. J., and Dillard, P. J., concur fully and specially*.

A23A0347. TARLTON v. THE STATE.
A23A0972. TARLTON v. THE STATE.

RICKMAN, Chief Judge, concurring fully and specially.

I concur fully in the majority opinion. I write separately to make clear that the opinion should in no way be seen as a ratification of the procedure used here that allowed the jury to replay the recorded forensic interviews in a completely closed courtroom during its deliberations. That procedure was subject to challenge in at least two respects.

First, allowing the jurors to replay the interviews in the courtroom with no one else present was the equivalent of allowing them to do so in the jury room and, given the facts here, warranted an objection based on a violation of the continuing witness

rule. See *Ross v. State*, 344 Ga. App. 477, 479-482 (2) (810 SE2d 645) (2018) (trial court erred in allowing jury to replay defendant's taped statement in the jury room during deliberations, in violation of the continuing witness rule); *Summage v. State*, 248 Ga. App. 559, 561 (1) (546 SE2d 910) (2001) (trial court erred by allowing victim's videotaped statement to go to the jury room). The proper procedure for complying with a jury's request to rehear a portion of trial testimony during deliberations is to return the jury to the courtroom to hear the testimony *in the defendant's presence*. See *Watkins v. State*, 237 Ga. 678, 681 (229 SE2d 465) (1976); *Olds v. State*, 293 Ga. App. 884, 889 (4) (668 SE2d 485) (2008).

Second, completely closing the courtroom before allowing the jury to replay the recorded interviews implicated the appellants' constitutional rights to a public trial. As a general rule, before the trial court can exclude the public from any stage of a criminal trial,

> the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

(Citation and punctuation omitted.) *Jackson v. State*, 339 Ga. App. 313, 318 (2) (b) (793 SE2d 201) (2016). Although the partial closure of the courtroom authorized by OCGA § 17-8-54 for minors testifying about a sex offense does not violate a defendant's constitutional right to a public trial, that statute allows parties to remain present during such testimony, and it does not authorize a trial court to clear the courtroom while recordings of interviews with the minor victims are published to the jury during trial or during the jury's deliberations. See *Spires v. State*, 357 Ga. App. 440, 445 (2) (b) (850 SE2d 854) (2020); *Tolbert v. State*, 321 Ga. App. 637, 638 (1) (742 SE2d 152) (2013).

I recognize that these issues are not properly before us and therefore fully concur in the majority opinion. I am authorized to state that Presiding Judge Dillard joins in this special concurrence.