UNITED STATES of America,
Plaintiff–Appellee,

v.

Andres ALARCON–SIMI, Defendant–
Appellant.

No. 01–30281.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 2002.

Filed Aug. 27, 2002.

Before: B. FLETCHER, ALARCÓN, and GRABER, Circuit Judges.

ALARCÓN, Circuit Judge:

Andres Alarcon–Simi ("Alarcon") appeals from the judgment of conviction following a jury trial on four counts of bank fraud, in violation of 18 U.S.C. §§ 2 and 1344 and one count of conspiracy in violation of 18 U.S.C. § 371, as well as the sentence imposed by the district court. He contends that the district court erred (1) in sustaining the Government's hearsay objection at trial during the cross-examination of Special Agent Alan Vanderploeg; (2) in denying his motion for judgment of acquittal made pursuant to Rule 29 of the Federal Rules of Criminal Procedure; (3) in entering the jury's guilty verdicts because the transcript of the previously recorded proceedings states that one juror's response during the polling of the jury was not audible; and (4) in imposing a 25–month sentence. We affirm the judgment and dismiss the appeal of the sentence because Alarcon's statement to Special Agent Vanderploeg was inadmissible hearsay, the district court did not plainly err in denying the Rule 29 motion, Alarcon has failed to demonstrate that the jury's verdict lacked unanimity, and the 25–month sentence was within the range set forth in the United States Sentencing Guidelines ("U.S.S.G.").

Hugh W. Fleischer, Anchorage, AL, for the defendant-appellant.

Kevin R. Feldis, Assistant United States Attorney, Anchorage, AL, for the plaintiff-appellee.

I

In June of 2000, Bryan Koeff ("Koeff") and Jeremy Hendrickson ("Hendrickson") began digging through the trash in a dumpster behind the Mail Cache Store in Anchorage, Alaska, in search of discarded

credit card convenience checks. They took the checks they found and wrote them out to their own bank accounts.

Soon, Alarcon agreed to join Koeff and Hendrickson in their fraudulent check-cashing conspiracy. During the summer of 2000, Alarcon allowed Koeff to deposit four forged checks, totaling $9,500, into Alarcon's bank account at the Alaska Federal Credit Union. Koeff deposited the checks under the name of Alarcon's business, APA Painting and Repair. A few days after Koeff deposited each check, Alarcon withdrew the money from this account and split it with Koeff and Hendrickson.

Throughout that summer, Alarcon, Koeff, and Hendrickson invited other individuals to join the fraudulent check-cashing conspiracy. Seferino Aguero ("Aguero") agreed to do so. Some of the forged credit card convenience checks were deposited into Aguero's bank account. Other checks were deposited into accounts opened by men solicited into the conspiracy by Koeff and Hendrickson. The conspirators' forged checks totaled $38,600.

Alarcon was indicted by a federal grand jury. In a First Superseding Indictment, he was charged with one count of conspiracy, in violation of 18 U.S.C. § 371, and four counts of bank fraud, in violation of 18 U.S.C. §§ 2 and 1344.

Special Agent Alan Vanderploeg testified at trial that he had investigated the case against Alarcon and discovered that forged checks had been deposited into Alarcon's account. On cross-examination, Alarcon's attorney asked Special Agent Vanderploeg whether he had arrested Alarcon in connection with the fraudulent check-cashing scheme. Special Agent Vanderploeg testified that he had. Alarcon's attorney then asked: "And is it a fact that he [Alarcon] stated to you that he didn't know about—." The prosecutor interrupted and objected to the question on

hearsay grounds. The district court sustained the objection. Defense counsel did not make an offer of proof as to what Special Agent Vanderploeg would have said had he been permitted to answer the question. The parties agree, however, that the testimony would have related to an exculpatory statement Alarcon made following his arrest. In sustaining the Government's objection, the district court rejected Alarcon's argument that his statement to Special Agent Vanderploeg fell under the "excited utterance" exception to the hearsay rule. *See* Fed.R.Evid. 803(2).

At the close of the Government's case, Alarcon moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion because it depended "upon the credibility of several witnesses . . . as well, of course, as upon the circumstantial evidence that's been presented. It's for the jury, not the Court, to determine the credibility of these witnesses, so the case will go to the jury." Alarcon did not renew his motion for judgment of acquittal at the close of all the evidence.

The jury returned a guilty verdict on each count of the indictment. After the clerk read the verdicts, the court asked her to poll the jury. The proceedings were recorded by electronic sound recording. A transcript of the sound recording was subsequently produced. The transcript reflects that eleven jurors audibly indicated that the verdicts read were true and correct. Following the name of the fifth juror polled, the transcript states: "(No audible reply.)." After the jury was polled, the clerk stated, "So say you one, so say you all." The court then stated: "The verdicts will be filed."

At the sentencing hearing, Alarcon argued he should be held accountable for only $9,500, the sum of the four forged checks deposited into his account. The

district court found, however, that he was responsible for $38,600, the sum of all the checks forged in furtherance of the conspiracy. After determining that Alarcon had a criminal history category of III and would be sentenced at an offense level of 14, the district court sentenced him to serve 25 months in prison.

## II

The district court had jurisdiction over the case pursuant to 18 U.S.C. § 3231. This court has jurisdiction over Alarcon's timely appeal pursuant to 28 U.S.C. § 1291.

## III

### A.

■ Alarcon contends that his post-arrest statement was admissible as an excited utterance under Rule 803(2) of the Federal Rules of Evidence. We review a ruling excluding evidence for abuse of discretion. *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir.2000).

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay is generally inadmissible in the guilt phase of a trial. Fed.R.Evid. 802.[1]

■ An out-of-court statement is admissible if it was an excited utterance as defined in Rule 803(2). An excited utterance is "[a] statement *relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition*."

Fed.R.Evid. 803(2). At common law, a statement qualified as an excited utterance if three factors existed. First, "[t]here must be some *occurrence, startling enough* to produce this nervous excitement and render the utterance spontaneous and unreflecting." 6 Wigmore, Evidence § 1750, at 202 (Chadbourn rev.1976). Second, "[t]he utterance must have been *before there had been time to contrive and misrepresent,* i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." *Id.,* at 202–03. Third, "[t]he utterance must *relate to the circumstances of the occurrence preceding it.*" *Id.,* at 222. Rule 803(2) does not deviate from the traditional concept of an excited utterance.[2]

"The admissibility of such an exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is … spontaneous and sincere. . . . "

Wigmore § 1745, at 193 (quoting *Keefe v. State,* 50 Ariz. 293, 72 P.2d 425, 427 (1937)).

■ Alarcon asserts that his exculpatory statement to Special Agent Vanderploeg was an excited utterance because it was made following the "traumatic incident" of being arrested. We disagree. Pursuant to Rule 803(2), a statement qualifies as an excited utterance only if it is "[a] statement relating to a startling event or condition made while the declarant was

---

1. Rule 802 states: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed.R.Evid. 802.

2. Rule 803 states, in pertinent part, "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness … (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2).

under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). The statement must therefore relate to a "startling event or condition" that caused the "stress of excitement" in the first place. Fed.R.Evid. 803(2) Advisory Committee Note. Alarcon's statement to Special Agent Vanderploeg did not relate to any incident that occurred *at the time of his arrest.* Instead, it related to earlier events. Therefore, Alarcon's post-arrest statement was not admissible as an excited utterance. The district court did not abuse its discretion in excluding Alarcon's post-arrest statement.

### B.

■ Alarcon also maintains that the district court erred in denying his motion for judgment of acquittal. Alarcon did not renew his Rule 29 motion at the close of all the evidence, however. We therefore review for plain error. *United States v. Oliver,* 60 F.3d 547, 551 (9th Cir.1995). To demonstrate plain error, the record must show " 'error' that is 'plain' and that 'affect[s] substantial rights.' " *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted).

■ In ruling on a Rule 29 motion, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bahena–Cardenas,* 70 F.3d 1071, 1072–73 (9th Cir.1995) (citation omitted); *see United States v. Clayton,* 108 F.3d 1114, 1116 (9th Cir.1997) (stating that the test applied in a Rule 29 motion "is the same as the test for challenging the sufficiency of the evidence"). Notably, it is not the district court's function to determine witness credibility when ruling on a Rule 29 motion. *See United States v. Rojas,* 554 F.2d 938, 943 (9th Cir.1977) (stating that, "[i]n ruling on a

Rule 29(c) motion, a district court must bear in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts' " (citation omitted)).

Alarcon sought a judgment of acquittal on the theory that the Government's witnesses were not credible. The district court did not err in denying the motion for judgment of acquittal on that ground. If the jury believed the prosecution's witnesses, the evidence proved all the essential elements of the crimes charged.

### C.

Alarcon further asserts that the district court erred in entering the guilty verdicts because one juror's response during polling is described in the transcript as "[n]o audible reply." He argues that the fact that the transcriber could not hear an audible reply on the tape recording demonstrates that the jury's verdict was not unanimous. Defense counsel did not object to the unanimity of the jury's verdict.

■ In *United States v. Lopez,* 581 F.2d 1338 (9th Cir.1978), we held that the right to a unanimous verdict cannot be waived. *Id.* at 1340. More recently, we held in *United States v. Ullah,* 976 F.2d 509 (9th Cir.1992), that the right to jury unanimity cannot be forfeited. *Id.* at 513. We stated in *Ullah* that "if, as here, a right or requirement [of jury unanimity] cannot be waived, a party need not object to its deprivation in order to preserve the issue for appeal." *Id.* Therefore, we must review for clear error the district court's finding that a jury verdict was unanimous. *See United States v. McClintock,* 748 F.2d 1278, 1293 (9th Cir.1984) (holding that the district court's finding of unanimity was not erroneous where the verdict was unanimous on its face and "[t]he only possible showing of uncertainty or contingency ...

[came] from the juror's emotional state and delayed response"). *But see United States v. August,* 984 F.2d 705, 711 (6th Cir.1992) (stating that "this court reviews for plain error when a jury is polled and the defendant does not object to the result of the polling").

An appellate court must rely on the trial judge's appraisal of the unanimity of a verdict. *See McClintock,* 748 F.2d at 1293 (relying on the trial court's appraisal of the circumstances and holding that the finding of unanimity was not in error). Only the trial judge can determine whether or not a juror's response during polling was "demonstrative of uncertainty." *Id.; see also United States v. Lustig,* 555 F.2d 737, 746 (9th Cir.1977) (stating that jury polling is a matter entrusted to the discretion of the trial judge).

In the instant case, the clerk read the verdicts in open court and polled the jury at the district court's request. After the jurors had indicated their responses, the district court ordered the verdicts to be filed and stated that Alarcon was "adjudged guilty on Count I, Count II, Count III, Count IV and Count V." Implicit in the district court's order that the verdicts be filed is a finding that the jury's verdicts were unanimous. This implicit finding of unanimity was not erroneous. The fact that one juror's response was not audible to the transcriber of the sound recording does not demonstrate that the jury lacked unanimity in its verdict. The juror's response may have been audible to the court and counsel, but not loud enough to be recorded on the electronic equipment. This possibility may explain defense counsel's failure to object to the entry of the verdict. It is also possible that the juror nodded rather than responding verbally. A timely objection would have permitted the district court to require the juror to speak up. Alarcon has failed to demonstrate that the jury's verdict was not unanimous.

**D.**

Finally, Alarcon contends that the district court erred in imposing a sentence of imprisonment for 25 months. He argues that he should have received no more than 21 months. We have previously held that an appellate court lacks jurisdiction to review "a sentence that is within the correctly applied guideline range and was not imposed in violation of law." *United States v. Pelayo–Bautista,* 907 F.2d 99, 101 (9th Cir.1990). In the instant case, Alarcon does not contend that he was sentenced outside the correctly applied guideline range, nor does he maintain that the sentence was imposed in violation of law. The sentence imposed by the district court was within the U.S.S.G. range of 21 to 27 months. Therefore, we lack jurisdiction to review the sentence imposed by the district court. *See id.*

CONVICTION AFFIRMED; APPEAL OF THE SENTENCE DISMISSED.