**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30206 |
| Plaintiff-Appellee, | D.C. No. 9:22-cr-00013-DLC-2 |
| v. | |
| MIGUEL ANGEL MEDINA, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted December 8, 2023
Portland, Oregon

Before: BERZON, NGUYEN, and MILLER, Circuit Judges.

Defendant Miguel Medina appeals his conviction for transportation of illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(ii). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The evidence was sufficient to sustain Medina's conviction. We review questions of sufficiency of the evidence de novo. *United States v. Tuan*

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

*Ngoc Luong*, 965 F.3d 973, 980-81 (9th Cir. 2020). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (quoting *United States v. Bahena-Cardenas*, 70 F.3d 1071, 1072-73 (9th Cir. 1995)). Under 8 U.S.C. § 1324(a)(1)(A)(ii), the government must prove that the defendant, (1) "knowing or in reckless disregard of the fact that an alien ha[d] come to, entered, or remain[ed] in the United States in violation of law," (2) "transport[ed], or move[d] or attempt[ed] to transport or move such alien within the United States . . . ." A conviction under a theory of aiding and abetting additionally requires proof that the defendant had the specific intent to facilitate the commission of the crime and that he assisted or participated in the commission of the crime. *United States v. Thum*, 749 F.3d 1143, 1148-49 (9th Cir. 2014).

Drawing all reasonable inferences in favor of the prosecution, a rational jury could find that Medina knew that co-defendant Leslie Rivera planned to transport illegal aliens and that he assisted her in the commission of that crime. Rivera testified that she wanted Medina to accompany her on the trip to Montana because she was a woman traveling alone, and if something went wrong with the car, he could fix it. Although Rivera drove the entire trip, the government presented evidence that she originally intended for Medina to assist her in driving and that

2

she "offered him an opportunity to make $1,000" if he came with her. The prosecution also introduced evidence that Medina told Border Patrol agents that he had received a text message from Rivera "telling him that . . . she ha[d] an opportunity to make some money" and "that he need[ed] the money." This evidence was sufficient to support the conclusion that Medina committed an affirmative act of assistance by providing protection and security to Rivera while she transported the aliens. *Cf. United States v. Johnson*, 484 F.2d 165, 168 (9th Cir. 1973) (holding that where the defendant had walked around a parking lot "in the manner of a lookout" during a drug transaction, there was sufficient evidence to support aiding and abetting liability for "serving as the lookout"); 1 Wharton's Criminal Law § 10:11 (16th ed., 2023 update) (explaining that to establish accomplish liability, "[i]t can be enough . . . to serve as a lookout for a criminal endeavor, even if no police arrive on the scene and the role of the lookout turns out to be unnecessary").

As to knowledge and intent, the jury was entitled to reject as implausible Medina's post-arrest statement that he was unaware of the plan to drive to Montana. Rivera asked him to travel with her to Yakima, but when the plan changed to drive an additional seven hours to Montana, Medina told officers he did not ask her any questions. Medina's statement was contradicted by Rivera, who testified that she asked Medina to ride with her to Montana, not Yakima. The

3

record thus provided sufficient evidence from which the jury could infer Medina's advance knowledge and specific intent.

2.    The district court did not violate Medina's rights under the Confrontation Clause.  Because Medina failed to preserve this argument below, we review for plain error.  *United States v. Macias*, 789 F.3d 1011, 1017 (9th Cir. 2015).  The record belies Medina's argument that the district court improperly limited his cross-examination of Rivera.  While the district court expressed concern that Rivera was close to "unraveling" her plea agreement due to her "pattern of minimiz[ing]" her knowledge of the offense, and stated that it "w[ould] declare a mistrial" if she continued in the same vein, the court in no way restricted Medina's ability to cross-examine Rivera.  Counsel could have (as Medina does in his appellate briefing) questioned the need for a mistrial if Rivera reneged but did not do so.  That counsel chose not to cross-examine Rivera further appears to have been a strategic choice, rather than a result of any prohibition imposed by the district court.

3.    Finally, the district court did not abuse its discretion in denying Medina a minor or minimal role adjustment.  We review the district court's identification of the legal standard de novo, its factual findings for clear error, and its application of the Sentencing Guidelines to the facts for abuse of discretion.  *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170-71 (9th Cir. 2017).  Here, the

district court applied the correct legal standard, specifically referencing the minor role guideline provision and relevant application note describing the factors to consider. The district court then concluded that Medina was not "substantially less culpable" than Rivera. *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018). The district court's decision was not an abuse of discretion—the defendants traveled together to pick up the illegal aliens, both were to be paid, and the original plan was for them to share the burden of driving.

**AFFIRMED**.