**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 29, 2024**

# In the Court of Appeals of Georgia

A24A0036. BRANTLEY v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Ronald Lee Brantley was convicted of two counts of child molestation of his niece.[1] On appeal from the denial of his amended motion for new trial, Brantley raises multiple enumerations of error. He contends that the trial court erred by denying his motion for a directed verdict of acquittal; by denying his special demurrer to the indictment; by admitting evidence of other acts of child molestation that the victim testified were committed in Florida; by admitting nude photographs found on his laptop; by excluding statements made by the victim's grandmother that were recorded on a law enforcement officer's body camera; by denying his request for

---

[1] The jury acquitted Brantley of one count of aggravated child molestation and one count of child molestation.

a jury charge on sexual battery as a lesser included offense; by instructing the jury on a definition of child molestation that did not conform to the indictment; and by failing to merge his two child molestation convictions for sentencing. For the reasons discussed below, we affirm.

Construed in the light most favorable to the verdict,[2] the evidence showed the following. During the time period in question, H. B., the victim in this case, lived with her grandparents and her two brothers.[3] The grandparents owned property in Georgia, Florida, and North Carolina, and the grandparents and three children divided their time primarily between their Georgia and Florida homes. Their home in Georgia was in Hancock County, and Brantley, who was the children's uncle, lived in a trailer next to the home on the same property. Brantley sometimes went with the grandparents and children when they traveled to their homes in Florida and North Carolina.

---

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[3] The father of H. B. and her brothers is deceased. The children began living with their grandparents after the Department of Family and Children Services removed them from the custody of their mother. Their grandfather died in 2018, and their grandmother died a few months before this case went to trial in 2022.

During her fifth grade school year, when H. B. was ten years old, Brantley began touching her inappropriately. Brantley would touch H. B.'s breasts and vagina underneath her clothes when they were together in his trailer, were watching movies in the grandparents' Georgia home, or were hunting on their Georgia property. According to H. B., Brantley touched her breasts and vagina "[t]oo many [times] to count." Brantley also grabbed H. B.'s hand and forced her to touch his penis on multiple occasions when they were watching movies in the Georgia home. When H. B. was at her grandparents' home in Florida, Brantley forced her to touch his penis, and, on another occasion there, he held her down on the bed and placed his penis in her vagina. The sexual abuse continued for several years, but H. B. was too scared to tell any adults because Brantley threatened to kill her and her other family members if she did so.

Brantley promised H. B. that if she provided him with nude photographs, "he would leave [her] alone for good." H. B. took nude photographs of herself on an iPad, and Brantley, who owned two Samsung cell phones, took nude photographs of her as well. According to H. B., each photograph taken by Brantley was of "half," not her

"full body." Brantley transferred the nude photographs to his laptop, but he continued to sexually abuse H. B.

In July 2019, when H. B. was 15 years old, she disclosed to her boyfriend that Brantley was sexually abusing her. H. B.'s boyfriend told his mother and a family friend about the sexual abuse, and they devised a plan to help H. B. leave home and stay with the boyfriend and his mother. However, when the boyfriend's mother and the family friend arrived in their truck to pick up H. B. at her house on the night of July 5, 2019, H. B.'s older brother told Brantley that someone was outside the house. Brantley grabbed a gun, and he and the older brother got in a golf cart and pursued the truck until it left the property. Brantley, H. B., and her grandmother then sat down together in the living room, and the grandmother asked H. B. what was going on and why people had come to the house that night. Brantley, who was sitting behind the grandmother on the couch, made a face at H. B. that scared her and led her not to tell her grandmother.

After the plan to help H. B. leave home failed, the boyfriend's mother and the family friend contacted the police. On July 6, 2019, sheriff's deputies with the Hancock County Sheriff's Office went to H. B.'s home. One of the deputies, who was

wearing a body camera that recorded the encounter, spoke with H. B. away from her other family members. H. B. recounted to the deputy how Brantley had sexually abused her since the fifth grade and had taken photographs of her.

After the deputy spoke with H. B., he contacted an investigator at the sheriff's office and drove H. B. to the station. The investigator spoke with H. B. and scheduled a forensic interview for her at a child advocacy center. During the recorded forensic interview, which was conducted on July 8, 2019, H. B. described how Brantley had sexually abused her in Georgia and Florida from fifth grade until shortly before the police were called.

In addition to arranging for the forensic interview, the investigator obtained a search warrant for Brantley's laptop based on H. B.'s disclosures about the nude photographs. The investigator executed the warrant on July 9, 2019, and after seizing Brantley's laptop, he handed it over to a certified computer forensic examiner for analysis. The forensic examiner made a copy of the laptop's hard drive, and he then used a forensic computer program called Magnet Axiom to examine the copied hard drive, after which he validated his results using other computer tools, including a program called Dollar Sign I Parser. In conducting his examination, the forensic

examiner determined that the laptop had only one user profile, which was entitled "Ron." Under that user profile, the forensic examiner located several photographs of H. B. in clothes, as well as multiple "closely zoomed-in" photographs of either breasts or a vagina. The forensic examiner determined from the "exit data" associated with the photographs that they had been taken with two Samsung phones, and that 25 of the nude photographs were taken with one of those phones. The forensic examiner also discovered that 24 pictures, comprised of 11 photographs of H. B. and 13 nude photographs of either breasts or a vagina, had been deleted and moved to the laptop's recycle bin on July 5, 2019. Additionally, the forensic examiner analyzed the search inquiries that had been conducted on the laptop and found evidence of web searches using the search terms "Girl fucks uncle," "Young pussy," "Young teens giving blow jobs," and other similar phrases.

Brantley was arrested and indicted for several crimes, including one count of child molestation for placing H. B.'s hand on his penis and one count of child molestation for placing his finger on H. B.'s vagina.[4] At the ensuing jury trial, H. B. testified to the acts of sexual abuse committed by Brantley as set out above. The State

---

[4] Brantley was indicted for two other offenses, but the jury acquitted him on those counts, as noted supra in footnote 1.

also introduced into evidence and played for the jury the body camera recording of H. B. disclosing the sexual abuse to the sheriff's deputy, as well as H. B.'s recorded forensic interview in which she recounted what had occurred. Among other witnesses called by the State, the certified computer forensic examiner who analyzed Brantley's laptop testified as to what he found on the hard drive, and his report, which included the photographs of clothed H. B. and the photographs of breasts and vaginas that were discovered on the laptop, was introduced into evidence and shown to the jury.

The defense theory of the case, as reflected in defense counsel's opening statement and closing argument, was that H. B. fabricated the allegations of sexual abuse because she wanted to stay in Georgia with her boyfriend and not move back to Florida with her family. The defense also argued that the nude photographs on Brantley's laptop were not of H. B. Brantley elected not to testify, but he called other family members as witnesses in an effort to call into question the veracity of H. B.'s account.

At the conclusion of the trial, the jury found Brantley guilty of the two aforementioned counts of child molestation. Brantley filed a motion for new trial, as

amended, in which he challenged the sufficiency of the evidence and raised other claims. Following a hearing, the trial court denied the motion, leading to this appeal.

1. Brantley contends that the trial court erred in denying his motion for a directed verdict of acquittal because the State failed to establish the essential elements of the charged offenses or prove venue.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact. When evaluating the sufficiency of the evidence as a matter of constitutional due process, we must determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Monroe v. State*, 315 Ga. 767, 768 (1) (884 SE2d 906) (2023). See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

"A person commits the offense of child molestation when such person[ ] . . . [d]oes an immoral or indecent act to or in the presence of or with any child under the

age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). One count of the indictment alleged that Brantley committed child molestation in Hancock County by placing H. B.'s hand on his penis with the intent to arouse and satisfy his sexual desires, and another count alleged that he committed child molestation in Hancock County by placing his finger on H. B.'s vagina with the intent to arouse and satisfy his sexual desires.

(a) Viewed in the light most favorable to the verdict, we conclude that the evidence presented at trial and summarized above was sufficient to entitle a rational jury to find Brantley guilty beyond a reasonable doubt of the two counts of child molestation. The testimony of H. B. regarding the sexual abuse, standing alone, was sufficient to support Brantley's convictions. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Tarlton v. State*, 368 Ga. App. 313, 315 (2) (890 SE2d 10) (2023) ("[T]he testimony of a single witness is generally sufficient to establish a fact, including the elements of child molestation, and physical or other corroborating evidence is not required.") (citations and punctuation omitted). Furthermore, the jury was authorized to consider, as substantive evidence of Brantley's guilt, H. B.'s out-of-court statements about the sexual abuse that she

made in her recorded forensic interview and to the sheriff's deputy in the body camera recording. See OCGA § 24-8-820 (child hearsay statute); *Rider v. State*, 366 Ga. App. 260, 264-265 (1) (883 SE2d 374) (2022) (explaining that children's out-of-court statements made during forensic interviews could be considered by the jury as substantive evidence of the defendant's guilt under the child hearsay statute); *Ramirez v. State*, 345 Ga. App. 611, 614 (1) (814 SE2d 751) (2018) (noting that child's prior statements to forensic interviewer and investigator could be considered as substantive evidence). And while Brantley presented defense witnesses in an effort to undermine H. B.'s account of the sexual abuse, resolution of conflicts in the evidence and the determination of witness credibility were for the jury, "and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Rider*, 366 Ga. App. at 265 (1).

Nevertheless, Brantley argues that the evidence was insufficient because the State failed to show that he committed the alleged acts with the intent to arouse his sexual desires. But

> [t]he child molestation statute does not require proof of the defendant's actual arousal. Instead, the law requires only that the defendant have acted with the intent to arouse his sexual desires. The question of intent

10

is peculiarly a question of fact for determination by the jury, which may infer a defendant's intent from the evidence presented at trial. Where the jury finds the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference.

(Citations and punctuation omitted.) *Brown v. State*, 324 Ga. App. 718, 720-721 (1) (751 SE2d 517) (2013). See OCGA § 16-2-6 ("A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.").

The jury was authorized to infer Brantley's intent to arouse or gratify his sexual desires from H. B.'s trial testimony and her out-of-court statements that on multiple occasions over several years, Brantley touched her vagina underneath her clothes and forced her to touch his penis. See *Seidenfaden v. State*, 249 Ga. App. 314, 319 (3) (547 SE2d 578) (2001) (noting that "[i]ntent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this," and concluding that the jury could infer that the defendant acted with the intent to arouse or satisfy his own sexual desires, where there was evidence that the defendant repeatedly fondled the child victim's private areas). Such an inference was further supported by H. B.'s trial

testimony and out-of-court statements that Brantley requested and took nude photographs of her, and with the forensic analysis of Brantley's laptop reflecting that he performed searches seeking web content relating to sexual encounters between uncles and nieces and involving young girls. See *Holzheuser v. State*, 351 Ga. App. 286, 290 (1) (a) (ii) (828 SE2d 664) (2019) (explaining that the content of defendant's phone, which included data reflecting that the defendant searched for and viewed websites that contained sexually suggestive images of young girls, was relevant to show defendant acted with the intent to gratify his sexual desires); *Phillips v. State*, 269 Ga. App. 619, 629-630 (8) (604 SE2d 520) (2004), disapproved in part on other grounds by *Pender v. State*, 311 Ga. 98, 103-105 (1) (a) (856 SE2d 302) (2021) (concluding that jury could infer that defendant rubbed child victim's genital area to arouse his own sexual desires, where, among other things, there was evidence that the defendant took nude photographs of the victim). Accordingly, the evidence was sufficient to establish the essential elements of the two counts of child molestation, including that Brantley acted with the requisite criminal intent.

(b) The evidence also was sufficient to prove venue. "Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like

every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." (Citation and punctuation omitted.) *Pavlov v. State*, 362 Ga. App. 831, 833-834 (1) (b) (870 SE2d 449) (2022). H. B. testified that her family's Georgia property was in Hancock County, and that there were multiple buildings on the property, including the house where she lived and Brantley's trailer, and woods where they hunted. H. B. further testified that Brantley committed the alleged acts of child molestation in his trailer, while they watched movies together in the house, and when they were hunting on the property. Based on H. B.'s testimony, the jury was authorized to find beyond a reasonable doubt that venue was established in Hancock County. See *Morris v. State*, 263 Ga. App. 115, 117 (1) (587 SE2d 272) (2003) ("A victim's testimony that the events occurred in the county where tried is sufficient to prove venue.").

2. Brantley argues that the trial court erred in denying his special demurrer to the indictment, which alleged in each count that the crime occurred "between the 1st day of January, 2015, and the 30th day of June, 2019, the exact date of the offense being unknown." According to Brantley, the indictment was subject to special demurrer because it failed to allege a specific date on which the crimes were

committed, and the State failed to show that it was unable to provide a more narrow date range.

> The general rule in Georgia is that an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer. [But] where the State can show that the evidence does not permit it to allege a specific date on which the offense occurred, the State is permitted to allege that the crime occurred between two particular dates. We review a trial court's denial of a special demurrer de novo; however, we apply different standards when we review rulings on special demurrers pretrial and post-trial. When reviewing a ruling before trial, we consider whether the indictment is perfect in form and substance, but when reviewing it after trial, we consider whether the defendant suffered actual prejudice from alleged deficiencies in the indictment. Here, we are reviewing the indictment post-trial, so we focus our analysis on actual prejudice.

(Citations and punctuation omitted.) *Picklesimer v. State*, 353 Ga. App. 718, 720-721 (1) (839 SE2d 214) (2020).

Even if the State could have more narrowly specified the dates of the crimes alleged in the indictment, Brantley has not proven that he suffered any actual prejudice. The range of dates in the indictment was based on H. B.'s forensic interview, and Brantley makes no contention that his counsel was denied an

opportunity to review the recorded interview in preparing his defense. Furthermore, during the trial, Brantley's counsel was able to use the range of dates set forth in the indictment to the defense's advantage, eliciting testimony from H. B. on cross-examination about several extended time periods that fell within that date range when she was at the family's property in Florida rather than in Georgia, and then emphasizing that testimony in closing argument to question H. B.'s account of the abuse as having occurred repeatedly at the Georgia property. And, indeed, as previously noted, Brantley was acquitted of two of the charged offenses. Under these circumstances, Brantley has failed to show that the alleged deficiencies in the indictment impaired his defense, and thus this enumeration provides no ground for reversal. See *Picklesimer*, 353 Ga. App. at 721 (1) (concluding that even if State could have narrowed the dates in the indictment, the defendant failed to show actual prejudice, where "there [was] no evidence that the form of the indictment impaired [his] ability to present his defense"); *Harris v. State*, 324 Ga. App. 411, 415 (3) (750 SE2d 721) (2013) (concluding that defendant's contention that dates in indictment could have been narrowed provided no basis for reversal, where the defendant failed

to "show how his investigation or defense preparation was hindered by the indictment as written").

3. Brantley argues that the trial court erred in admitting H. B.'s trial testimony and out-of-court statements in her recorded forensic interview about incidents in which he allegedly molested her in Florida. According to Brantley, evidence concerning the Florida incidents of child molestation was not relevant, there was no prosecutorial need for the evidence, any probative value of the evidence was substantially outweighed by the danger of unfair prejudice, and the evidence was confusing and misleading to the jury.

The trial court admitted evidence of the Florida incidents of child molestation under OCGA § 24-4-414 (a) ("Rule 414"), which provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." Rule 414 (a) "is a rule of inclusion, with a strong presumption in favor of admissibility." (Citation and punctuation omitted.) *State v. Palacio-Gregorio*, 361 Ga. App. 339, 343 (2) (a) (862 SE2d 605) (2021). It "supersedes the general prohibition against the admission of

propensity evidence imposed by OCGA § 24-4-404 (b)," and evidence is admissible under the rule "to show that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case." (Citation, punctuation, and footnote omitted.) *State v. Berman*, 367 Ga. App. 447, 449 (886 SE2d 849) (2023). A trial court's decision to admit evidence under Rule 414 (a) is reviewed only for an abuse of discretion. *Palacio-Gregorio*, 361 Ga. App. at 343 (2) (a).

The trial court acted within its discretion in ruling that evidence of the Florida incidents of child molestation was admissible under Rule 414 (a). That rule is the proper statutory authority for admitting other acts of child molestation committed against the victim by the defendant under Georgia's current Evidence Code. See *Hamby v. State*, 358 Ga. App. 105, 109-110 (3) (853 SE2d 874) (2021). See generally *Flowers v. State*, 307 Ga. 618, 620-621 (2) (837 SE2d 824) (2020) (noting that "cases addressing the admissibility of evidence of 'prior difficulties' [between a victim and the defendant] decided under the old Evidence Code do not apply in cases controlled by the current Evidence Code"). And, here, evidence of the Florida incidents of child molestation clearly was relevant to Brantley's intent, motive, and propensity to

commit the crimes of child molestation against H. B. See *Dixon v. State*, 350 Ga. App. 211, 214 (1) (828 SE2d 427) (2019); *Hamby*, 358 Ga. App. at 110 (3). The contested evidence therefore was admissible under Rule 414 (a).

Nevertheless, evidence that is admissible under Rule 414 may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" OCGA § 24-4-403 ("Rule 403"). See *Palacio-Gregorio*, 361 Ga. App. at 343 (2) (a). But "Rule 403 is an extraordinary remedy which courts should invoke sparingly, and the balance should be struck in favor of admissibility." (Citation and punctuation omitted.) *Berman*, 367 Ga. App. at 450. "The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Olds v. State*, 299 Ga. 65, 70 (2), n. 7 (786 SE2d 633) (2016). The determination as to whether evidence should be excluded under Rule 403 "lies within the discretion of the trial court." (Citation and punctuation omitted.) *Hamby*, 358 Ga. App. at 110 (3). And that determination "calls for a common sense assessment of all the circumstances surrounding the previous offense, including prosecutorial need, overall similarity between the previous act and the charged

offense, as well as temporal remoteness." (Citation and punctuation omitted.)

*Berman*, 367 Ga. App. at 450.

The trial court acted within its discretion in declining to exclude evidence of the Florida incidents of child molestation under the Rule 403 balancing test.[5] "In this case, the State's need for the evidence was great based upon [Brantley's] attacks on [H. B.'s] credibility, the lack of any physical evidence, and [H. B.'s] delayed outcry." *Dixon v. State*, 341 Ga. App. 255, 262 (1) (b) (800 SE2d 11) (2017). See *McAllister v. State*, 351 Ga. App. 76, 84-85 (1) (c) (830 SE2d 443) (2019) ("[W]hen the defendant seeks to attack a victim's credibility, the State has an increased need to introduce evidence of prior acts."). Furthermore, there was great similarity between the other acts of child molestation committed in Florida and the acts charged in the present

---

[5] Brantley asserts that the trial court erred by not making an explicit finding regarding the Rule 403 balancing test in its pretrial order in which it declined to exclude the evidence of the Florida incidents. However, "[a]bsent some express showing that the trial court did not understand its obligation to conduct the balancing test, we will not read such error into the trial court's ruling. Moreover, there is no requirement that the court explicitly analyze the balancing test on the record." (Citations and punctuation omitted.) *Williams v. State*, 366 Ga. App. 114, 123 (1) (881 SE2d 1) (2022). Furthermore, the trial court addressed the Rule 403 balancing test in its order denying Brantley's motion for new trial, and we have held that "the trial court satisfies its obligation if the findings [regarding balancing] appear in the order denying the motion for new trial." *Dixon*, 350 Ga. App. at 214 (1).

case, as they involved sexual acts committed against the same victim within the same time frame as part of a recurring pattern of abuse. Additionally, the trial court gave limiting instructions to the jury before introduction of evidence of the Florida incidents and in its final charge, which mitigated the risk of unfair prejudice or confusion to the jury. See *Wilson v. State*, 312 Ga. 174, 193-194 (2) (b) (860 SE2d 485) (2021); *McAllister*, 351 Ga. App. at 85 (1) (d); *Dixon*, 341 Ga. App. at 262 (1) (b). "In light of the strong presumption in favor of admissibility, we cannot say that the trial court abused its discretion in allowing the [other] acts to be admitted." (Citation and punctuation omitted.) *Maner v. State*, 358 Ga. App. 21, 25 (1) (852 SE2d 867) (2020).

4. Brantley maintains that the trial court erred in allowing the nude photographs discovered on his laptop to be admitted into evidence and shown to the jury. According to Brantley, the photographs, which were admitted into evidence as part of the forensic examiner's report for the laptop, should have been excluded because they were not properly authenticated, were irrelevant, and were unfairly prejudicial.

(a) As to the issue of authentication, Brantley does not dispute that the nude photographs were on his laptop. Rather, he argues that although the State claimed that the nude photographs were the ones that Brantley had taken of H. B., the State failed

to sufficiently authenticate that the photographs, which were close-up images of either breasts or a vagina, were of H. B. rather than an adult. He emphasizes that the State did not show the nude photographs to H. B. and ask her to identify them during her trial testimony, and that the forensic examiner of the laptop did not identify the person in the nude photographs.

Photographs may be authenticated with evidence "sufficient to support a finding that the matter in question is what its proponent claims," OCGA § 24-9-901 (a), and "[a]uthentication may be achieved through any means that satisfies that statutory standard." *Henderson v. State*, 317 Ga. 66, 87 (8) (891 SE2d 884) (2023). The requirement of authentication can be satisfied through circumstantial evidence, *Nicholson v. State*, 307 Ga. 466, 475 (5) (837 SE2d 362) (2019), which may include a photograph's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." OCGA § 24-9-901 (b) (4). The same rules of authentication apply where the photograph is drawn from an electronic source. See *Henderson*, 317 Ga. at 87 (8); *Pierce v. State*, 302 Ga. 389, 395 (2) (a) (807 SE2d 425) (2017).

When authenticating evidence, the proponent must present evidence sufficient to make out a prima facie case that the proffered

21

evidence is what it purports to be. Once that prima facie case is established, the evidence is admitted, and the ultimate question of authenticity is decided by the jury.

(Citations and punctuation omitted.) *Henderson*, 317 Ga. at 87 (8). The proponent's prima facie burden is met by offering sufficient evidence to allow a reasonable jury to find that the proffered evidence is what it is purported to be. See OCGA §§ 24-1-104 (b); 24-9-901 (a); *Nicholson* , 307 Ga. at 475 (5), 476 (6). A trial court's ruling on authentication is reviewed for an abuse of discretion, *Henderson*, 317 Ga. at 86 (8), and the ruling will not be disturbed on appeal so long as there is "some competent evidence in the record to support authentication." (Citation and punctuation omitted.) *United States v. Hawkins*, 905 F2d 1489, 1493 (II) (A) (1) (11th Cir. 1990).[6] Moreover, even if a proffered document or photograph is admitted prematurely, the error is cured if the evidence needed to support its admission is introduced later during the course of trial. See *United States v. Luna*, 649 F3d 91, 103 (II) (B) (1) (b) (1st Cir. 2011) ("If evidence is admitted prematurely because it is not yet

---

[6] "OCGA § 24-9-901 departs from the former Evidence Code and is nearly identical to Federal Rule of Evidence 901. Thus, we look to the federal appellate courts for guidance in interpreting OCGA § 24-9-901." *Nicholson* , 307 Ga. at 476 (5), n. 6.

authenticated, a court of appeals need not remand for a new trial if later testimony cures the error."); *United States v. Blackwell*, 694 F2d 1325, 1331 (II) (A) (1) (DC Cir.1982) ("[E]ven if the photographs were not fully authenticated by the prosecution and their admission into evidence premature, any error was cured by the testimony of the defendant before the close of the trial. A new trial is therefore not required on this ground."); *United States v. Stearns*, 550 F2d 1167, 1172 (9th Cir.1977) (concluding that premature admission of photographs was harmless, where, among other things, "all of the authenticating evidence to support admission of the photographs was introduced before close of the prosecution's case in chief").

In the present case, H. B. testified that she took nude photographs of herself at Brantley's request, that Brantley had multiple cell phones and took nude photographs of her with his phone, that each photograph taken by Brantley was of "half" rather than her "full body," that Brantley transferred the photographs to his laptop, and that she saw the photographs on his laptop. The investigator with the sheriff's office testified that he seized Brantley's laptop and handed it over to the forensic examiner for analysis. That analysis revealed that under Brantley's user profile, there were multiple photographs of clothed H. B. as well as close-up nude photographs of either

breasts or a vagina taken with two Samsung cell phones, and that 11 photographs of H. B. and 13 of the nude photographs were deleted and moved to the laptop's recycle bin on July 5, 2019. That was the same day when H. B. unsuccessfully attempted to run away from home, when the grandmother asked H. B. in front of Brantley what was going on and why people had come over to the house that night, and when Brantley made a face at H. B. that scared her and led her not to tell her grandmother. Additionally, there was evidence that Brantley owned two Samsung cell phones.

Given this record, there was sufficient evidence to allow a reasonable jury to find that the nude photographs found on Brantley's laptop were of H. B. and thus to authorize their admission. See OCGA § 24-9-901 (b) (4); *Nicholson*, 307 Ga. at 475 (5), 476 (6). See also *United States v. Holmquist*, 36 F3d 154, 169 (IV) (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."). And, even if the trial court prematurely admitted the forensic examiner's report containing the nude photographs, "the [State] offered sufficient support for the [trial] court to enter the [photographs] into evidence eventually, even if not at the early point when it actually

did admit the [photographs]; thus, there was no reversible error." *Luna*, 649 F3d at 104 (II) (B) (1) (b). See *Blackwell*, 694 F2d at 1331 (II) (A) (1); *Stearns*, 550 F2d at 1172.

(b) Brantley also argues that the nude photographs were inadmissible because they were irrelevant and unfairly prejudicial. But his argument hinges on his position that the nude photographs were of an adult rather than of H. B. And that argument fails for the reasons discussed supra in Division (4) (a). Brantley therefore has failed to demonstrate error by the trial court. See *Hutcheson v. State*, 361 Ga. App. 890, 893-895 (1) (864 SE2d 106) (2021) (concluding that trial court acted within its discretion in admitting 13 images of child pornography recovered from the defendant's computer because the images were relevant and admissible under Rule 414 (a), and their probative value was not substantially outweighed by the danger of unfair prejudice under Rule 403).

5. Brantley asserts that the trial court erred in excluding the portion of the body camera recording that showed the sheriff deputy's interview of the grandmother as inadmissible hearsay.[7] According to Brantley, the grandmother's statements to the

---

[7] Brantley also claims that the portion of the body camera recording that was admitted into evidence at trial – the interview of H. B. by the sheriff's deputy –

deputy were admissible under the hearsay exceptions for excited utterance and present sense impression.

When the sheriff's deputy came to H. B.'s house on July 6, 2019 and spoke with her about the sexual abuse allegations, he also interviewed the grandmother. The grandmother told the deputy that H. B. tells lies and that she had tried to talk with H. B., but H. B. would not tell her anything. These statements of the grandmother, which were included on the deputy's body camera recording, were found by the trial court to constitute inadmissible hearsay.

A trial court's ruling on the admission of evidence is reviewed for an abuse of discretion, see *Lopez v. State*, 311 Ga. 269, 272 (1) (857 SE2d 467) (2021), and we discern no abuse of discretion by the trial court in this case. Contrary to Brantley's assertion, the grandmother's statements were not admissible as an excited utterance. The hearsay exception for an excited utterance provides that "[a] statement *relating*

improperly bolstered the testimony of the deputy and of H. B. But Brantley does not cite to any legal authority to support his contention, and thus his claim of error is deemed abandoned. See Ct. App. R. 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Blanton v. State*, 324 Ga. App. 610, 615 (2) (a), n. 10 (751 SE2d 431) (2013) (deeming appellant's claim of evidentiary error abandoned based on his failure to cite to any legal authority to support his claim).

26

*to a startling event or condition* made while the declarant was under the stress of excitement caused by the event or condition" is not subject to the rule against hearsay. (Emphasis supplied.) OCGA § 24-8-803 (2). See *Lopez*, 311 Ga. at 271 (1). "The statement must therefore relate to a 'startling event or condition' that caused the 'stress of excitement' in the first place." *United States v. Alarcon-Simi*, 300 F3d 1172, 1176 (III) (A) (9th Cir. 2002).[8] See *United States v. Joy*, 192 F3d 761, 766 (II) (A) (7th Cir. 1999) ("For a statement to be admissible under [the excited utterance] exception the proponent must demonstrate that[ ] . . . the declarant's statement relates to the startling event."). Here, Brantley appears to contend that the sheriff deputy's arrival at the house was a startling event to the grandmother, but even if it was, the grandmother's statements were not about the deputy's arrival or presence at the home; rather, her statements related to her past experience and interactions with H. B. Consequently, the grandmother's statements did not fit within the definition of an excited utterance. See *United States v. Vargas*, 689 F3d 867, 876-877 (II) (B) (7th Cir. 2012), abrogated in part on other grounds as recognized in *Burton v. City of Zion*, 901

---

[8] Because OCGA § 24-8-803 (2) mirrors Rule 803 of the Federal Rules of Evidence, we look to federal cases addressing Rule 803 for guidance. See *Jenkins v. State*, 303 Ga. 314, 317 (2) (812 SE2d 238) (2018).

F3d 772, 777-778 (I) (7th Cir. 2018) (concluding that statements made to officer were not excited utterance because the statements related to a prior event); *Alarcon-Simi*, 300 F3d at 1176 (III) (A) (concluding that statements made to officer after arrest were inadmissible as an excited utterance because, even if the arrest was a startling event, the statements did not relate to the arrest).

Nor were the grandmother's statements admissible as a present sense impression. The hearsay exception for a present sense impression provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter" will not be excluded under the hearsay rule. OCGA § 24-8-803 (1). "To be admitted under this exception, the statement must describe or explain an event or condition that is personally witnessed by the declarant and is essentially contemporaneous to the statement." (Citations and punctuation omitted.) *Varner v. State*, 306 Ga. 726, 731 (2) (b) (ii) (832 SE2d 792) (2019). "The underlying theory of the present sense impression exception is that the substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation." (Citation and punctuation omitted.) *Grimes v. State*, 364 Ga. App. 518, 521 (875 SE2d 500) (2022). Here,

28

however, the grandmother's statements were not about an event or condition that she was currently perceiving or immediately after she perceived it, and thus her statements did not fall within the definition of a present sense impression. See id. at 522 (concluding that statement to responding officer did not constitute a present sense impression, where the statement "was not sufficiently contemporaneous with the event" described in the statement). Consequently, the trial court committed no error in excluding the statements of the grandmother.

6. Brantley contends that the trial court erred by instructing the jury on the statutory definition of child molestation as set out in OCGA § 16-6-4 (a) rather than giving a charge that tracked the specific charges in the indictment.[9] He asserts that the instruction authorized the jury to convict him for any "immoral or indecent act to or in the presence of or with [H. B.]" rather than more narrowly for placing H. B.'s hand on his penis and for placing his finger on H. B.'s vagina as alleged in the indictment.

> Where the indictment charges a defendant committed an offense by one method, it is reversible error for the court to instruct the jury that the offense could be committed by other statutory methods with no

---

[9] The trial court instructed the jury: "A person commits the offense of child molestation when that person does an immoral or indecent act to a child less than 16 years of age with the intent to arouse or satisfy the sexual desires of the person."

29

limiting instruction. The defect is cured, however, where, as here, the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

(Citations and punctuation omitted.) *Mikell v. State*, 286 Ga. 722, 724 (2) (b) (690 SE2d 858) (2010). See *Seals v. State*, 358 Ga. App. 783, 787-788 (2) (856 SE2d 384) (2021). The jury charge as a whole, when coupled with the fact that the jury was provided a copy of the indictment, "fairly instructed jurors that they could convict [Brantley of child molestation] only as charged in the indictment." (Citation and punctuation omitted.) *Seals*, 358 Ga. App. at 787-788 (2). See *Mikell*, 286 Ga. at 724 (2) (b). We therefore discern no basis for reversal.

7. Brantley asserts that the trial court erred in denying his request to charge the jury on sexual battery as a lesser included offense of child molestation. See OCGA § 16-6-22.1 (b) ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.").

> [Brantley] is correct that if the evidence showed a touching without the intent necessary for child molestation, he would have been

30

entitled to a jury instruction on sexual battery as a lesser included offense. As detailed in Division 1[(a)], however, the evidence supported a finding of the requisite intent here. [Brantley] has pointed to no evidence demonstrating that a touch occurred without the necessary intent. And he did not defend the case on the ground that he touched [H. B.] without intent. He pursued the "all or nothing" defense that [H. B.] made up her entire story. . . . [S]uch circumstances do not support a charge on sexual battery as a lesser included offense of child molestation. On the contrary, they demonstrate either the indicted crime or no crime at all. Accordingly, a jury charge on sexual battery was not warranted.

(Citations and punctuation omitted.) *Smith v. State*, 310 Ga. App. 392, 396 (3) (713 SE2d 452) (2011). See *Solias-Macias v. State*, 356 Ga. App. 561, 566-567 (3) (848 SE2d 180) (2020).

8. Lastly, Brantley contends that the trial court erred in failing to merge his child molestation convictions for purposes of sentencing.

"When a defendant enumerates a merger error after being convicted of multiple counts of the same crime, the correct merger analysis requires courts to ask whether those crimes arose from a single course of conduct and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis." (Citations, punctuation, and emphasis omitted.) *Johnson v. State*, 313 Ga. 155, 159 (4)

(868 SE2d 226) (2022). In *Scott v. State*, 356 Ga. App. 152, 156 (5) (846 SE2d 241) (2020), we applied the unit-of-prosecution analysis to determine whether multiple convictions of child molestation under OCGA § 16-6-4 (a) (1), predicated on acts "occurring within a relatively short time frame and in a single course of conduct," should merge for purposes of sentencing. We determined that the ambiguity in the statute should be resolved in favor of the defendant under the rule of lenity, and that, as a result, multiple child molestation convictions should be merged for sentencing when predicated on "multiple touches to a victim, during a single uninterrupted course of conduct." Id. at 163 (5).

In the present case, however, the sexual acts alleged in the two child molestation counts of the indictment were not part of a single course of conduct taking place over a short time period. Rather, the indictment alleged that the sexual acts occurred sometime between January 1, 2015 and June 30, 2019, and H. B. testified that Brantley made her touch his penis and touched her vagina on several different occasions and that the sexual abuse spanned years. Consequently, the sexual acts alleged in the child molestation counts "were discrete, separate offenses occurring over a period of years, rather than during a single course of conduct taking place over

32

a relatively short period of time," and the trial court thus did not err in failing to merge those counts for sentencing purposes. *Carr v. State*, 363 Ga. App. 35, 42 (2) (a) (ii) (870 SE2d 531) (2022) (concluding that child molestation counts did not merge, where the victim testified about different instances of sexual abuse that "lasted from when she was in sixth grade until she was a sophomore in high school"). See *Pavlov v. State*, 362 Ga. App. 831, 835-836 (2) (a) (870 SE2d 449) (2022) (concluding that child molestation counts did not merge, where victim testified that the acts of sexual abuse occurred on several separate nights as well as in different locations).

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*